ORIGINAL

#066073

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BIOFUNCTION, LLC

v.

THE UNITED STATES

No. 07- 67 C

COMPLAINT

**First Cause of Action**
(Breach of Contract)

1. Plaintiff, BIOFUNCTION, LLC (hereinafter "BIOFUNCTION"), is a limited liability company organized and existing under the laws of the State of California and, under those laws has all of the powers of a natural person in carrying out its business activities, including the power to enter into contracts. BIOFUNCTION's offices are located in the City of Concord, State of California. BIOFUNCTION is a business that provides services related to disability claims, including services to evaluate the physical capability of employees to work and to match jobs to the physical capabilities of employees.

2. JURISDICTION: This claim is made in this court pursuant to the jurisdiction granted by 28 U.S.C. 1491, 41 U.S.C. Sections 601-613.

3. CONTRACT: On May 16, 2003, the United States Postal Service ("USPS"), an entity created by 39 U.S.C. Section 101 et seq. (The Postal Reorganization Act) as an establishment of the Government of the United States ("UNITED STATES"), entered into a contract with BIOFUNCTION; this contract was identified as 1BCHSO-03-F-5453 (hereinafter "Contract").

a. Under the terms of the Contract, BIOFUNCTION agreed to provide certain services related to the evaluation of disabled workers and providing them with job offers tailored to accommodate each worker's disability. This work specifically included the use of the ErgoMatch or ErgoWizard system that evaluated the extent of disabilities and, based on ergonomic analysis, pinpointed jobs, tasks and modifications for accommodating the disability of the employee. BIOFUNCTION agreed to provide access to its ErgoMatch and ErgoWizard system and agreed that USPS would be allowed to use the system for 3,000 evaluations (called "hits") at the rate of $113.60 per hit for a total amount of $340,800. Payment of the $340,800 was to be made in 8 equal monthly installments upon award of the contract. BIOFUNCTION also agreed to provide job task analysis services for $95.00 per unit; In addition, BIOFUNCTION agreed to provide job training for $260 per participant and District Setup and Data Integration at a cost of $7,500.00 per District.

b. The Contract between USPS and BIOFUNCTION also provided that upon termination of the Contract, "supplier will be paid a percentage of the work performed prior to the notice of termination plus reasonable charges the supplier can demonstrate to the satisfaction of the Postal Service using its standard record keeping system have resulted from the termination. " This provision remained in effect at all relevant times.

c. The Contract was modified on January 16, 2004. This modification provided for a continuation of the software licenses for ErgoWizard and for additional services:

i. For a guaranteed 1,426 hits at $175 per hit for a total of $249,900 by December 31, 2004;

ii. For an additional 572 hits at no additional charge;

iii. For the next 200 hits at a price of $113.60 per hit;

iv. For job task analysis, at four hours per task, minimum of two tasks at $95 per hour;

v. The amended contract price was agreed as $590,700. The additional amount of $249.900 was agreed to be payable in 12 monthly installments of $20,825 each.

d. The Contract was modified in July 2004 to change the location of the USPS contract administrator to San Francisco Purchasing Service Center.

e. The contract was further extended and modified on February 8, 2005 and the contract amount was increased by an additional $90,000.

4. BIOFUNCTION performed all of its obligations under the contract or, to the extent that it did not, its performance was prevented or made impossible by the actions of USPS.

5. On or about February 14, 2005 USPS terminated said contract, asserting that the effective date was February 11, 2005 in the body of the contract amendment form but entering February 14, 2005 as the effective date in block 3 of the form.

6. BIOFUNCTION timely submitted its claim for compensation to a contracting officer of the USPS.

7. USPS has not responded to BIOFUNCTION's claim with a decision.

8. USPS has refused and failed to perform its duties and obligations in that it has refused to pay the BIOFUNCTION invoice for services rendered prior to termination and for reasonable charges resulting from the USPS termination of its contract. BIOFUNCTION's invoice for charges of $368,408.40 was submitted to USPS on or about March 28, 2005.

9. BIOFUNCTION has sustained costs and expenses in performing the contract which have not been paid and seeks payment and damages in the following sums

a. Capitalization costs attributable to the additional mobilization demanded by USPS in an amount to be proved at trial;

b. Unpaid invoices totaling $368,408.40; and

c. Prejudgment interest at the legal rate from the date the BIOFUNCTION claim was presented to the contracting officer, May 22, 2006.

WHEREFORE BIOFUNCTION seeks judgment against the UNITED STATES as is hereinafter set forth.

**Second Cause of Action**
(Breach of Covenant of Good Faith and Fair Dealing)

10. BIOFUNCTION hereby incorporates paragraphs 1 through 9, inclusive, as though fully set forth in this, the Second Cause of Action.

11. As part of its contract with BIOFUNCTION, USPS was obligated to deal with BIOFUNCTION in good faith and to deal with BIOFUNCTION fairly.

12. USPS breached its covenant of good faith and fair dealing by requiring BIOFUNCTION to support a USPS integrated cost containment program involving hits from the ErgoWizard job task matching system.

13. USPS induced BIOFUNCTION to provide increased support to USPS's plan to utilize the Contract hits in bad faith:

a. USPS represented that it would properly distribute the job offers made to its disabled employees;

b. USPS represented it would contest and take appropriate administrative action if its job offers were rejected by its disabled employees; and

c. USPS represented it would act to assist BIOFUNCTION to verify and justify the accuracy and effectiveness of its ErgoMatch / ErgoWizard system for use in the USPS.

14. USPS made the aforesaid representations with knowledge of facts informing them that the actions promised by its representations could not be accomplished and without any intention of carrying out the actions promised.

15. USPS failed to act in the manner represented to BIOFUNCTION and failed to contest the rejection of job offers by its disabled employees; unreasonably delayed acting on the job offers provided by BIOFUCTION; and refused to have its employees attend necessary "fitness for duty" examinations.

16. As a result of the breach of covenant of good faith and fair dealing by USPS, BIOFUNCTION has been caused to incur expense and damages as and for the following sums:

a. Capitalization costs attributable to the additional mobilization demanded by USPS in an amount to be proved at trial;

b. Unpaid invoices totaling $368,408.40; and

c. Interest at the legal rate from the date the BIOFUNCTION claim was presented to the contracting officer, May 22, 2006.

WHEREFORE BIOFUNCTION seeks judgment against the UNITED STATES as is hereinafter set forth.

**Third Cause of Action**
(Breach of Duty of Cooperation)

17. BIOFUNCTION hereby incorporates paragraphs 1 through 16, inclusive, as though fully set forth in this, the Third Cause of Action.

18. As part of its obligations under the aforesaid contract, USPS covenanted and agreed to cooperate with BIOFUNCTION regarding its performance of contract; and specifically agreed that it would not obstruct delay or prevent BIOFUNCTION's performance of the contract.

19. USPS undertook the obligation and duty to BIOFUNCTION to cooperate with BIOFUNCTION in that it induced BIOFUNCTION to perform further and additional services in connection with the ErgoWizard job matching service by representing that USPS would fully perform its contract term, that USPS would aggressively implement its cost containment program and representing that USPS would perform all acts necessary to aggressively implement the cost containment program and that, upon the completion of the project, would provide an operational endorsement of the ErgoWizard system.

20. The USPS knew or should have known that it could not perform the actions represented and could not support completion of the cost containment program; USPS did not intend to perform the actions as represented.

21. In inducing the additional performance by BIOFUNCTION, USPS knew that BIOFUNCTION would rely on its representations to commit resources and capital to providing additional services that despite this knowledge, USPS continued to accept services and performance from BIOFUNCTION.

22. USPS failed to act in the manner represented to BIOFUNCTION and failed to contest the rejection of job offers by its disabled employees; unreasonably delayed acting on the job offers provided by BIOFUCTION; and refused to have its employees attend necessary "fitness for duty" examinations.

23. As a direct and proximate result of USPS's breach of covenant, BIOFUNCTION has incurred undue expense and will be damaged in the following amounts:

a. Capitalization costs attributable to the additional mobilization demanded by USPS in an amount to be proved at trial;

b. Unpaid invoices totaling $368,408.40; and

c. Interest at the legal rate from the date the BIOFUNCTION claim was presented to the contracting officer, May 22. 2006.

WHEREFORE BIOFUNCTION seeks judgment against the UNITED STATES as is hereinafter set forth.

**Fourth Cause of Action**
(Breach of Implied Contract)

24. BIOFUNCTION hereby incorporates paragraphs 1 through 23, inclusive, as though fully set forth in this, the Fourth Cause of Action.

25. On or about October 4, 2004, USPS entered into an agreement with BIOFUNCTION.

26. BIOFUNCTION agreed to provide additional services support to USPS's plan to utilize the Contract hits; BIOFUNCTION agreed to provide training and additional support to assist the USPS to offer suitable jobs to employees for whom the ErgoWizard system identified to be capable of the work.

27. In consideration for the agreement by BIOFUNCTION to perform the additional service for USPS, USPS agreed:

a. USPS represented that it would properly distribute the job offers made to its disabled employees;

b. USPS represented it would contest and take appropriate administrative action if its job offers were rejected by its disabled employees; and

c. USPS would act to assist BIOFUNCTION to verify and justify the accuracy and effectiveness of its ErgoWizard system for use by the USPS.

d. Upon completion of processing the approximately 300 job offers, USPS would provide BIOFUNCTION with a formal operational endorsement to the Pacific Area for consideration of potential future expansion of its program to all districts within the Pacific Area.

28. BIOFUNCTION is informed and believes and based thereon alleges that, the agreement was entered on behalf of the USPS by government representatives having actual authority to bind the United States and that said agreement was ratified by government representatives having actual authority to bind the United States.

29. The USPS breached its agreement with BIOFUNCTION in that it failed to perform the acts as represented to BIOFUNCTION. USPS failed to contest the rejection of job offers by its disabled employees; unreasonably delayed distributing the job offers prepared by BIOFUNCTION; and failed and refused to have its employees attend "fitness for duty" examinations; terminated the written contract for the ErgoWizard services, and refused to pay BIOFUNCTION's reasonable expenses incurred in performing the agreed services.

30. As a direct and proximate result of USPS's breach, BIOFUNCTION has incurred expense and damages as and for the following sums:

a. Capitalization costs attributable to the additional mobilization demanded by USPS in an amount to be proved at trial;

b. Unpaid invoices totaling $368,408.40;

c. Interest at the legal rate from the date the BIOFUNCTION claim was presented to the contracting officer, May 22. 2006.

WHEREFORE BIOFUNCTION seeks judgment against the UNITED STATES as is hereinafter set forth.

**Fifth Cause of Action**
(Unjust Enrichment)

31. BIOFUNCTION hereby incorporates paragraphs 1 through 30, inclusive, as though fully set forth in this, the Fifth Cause of Action.

32. On or about October 4, 2004, USPS entered into an agreement with BIOFUNCTION in which BIOFUNCTION agreed to provide additional services support to USPS's plan to utilize the Contract hits; BIOFUNCTION agreed to provide training and additional support to assist the USPS to offer suitable jobs to employees for whom the ErgoWizard system identified to be capable of the work.

33. In consideration for the agreement by BIOFUNCTION to perform the additional service for USPS, USPS agreed:

a. USPS would properly distribute the job offers made to its disabled employees;

b. USPS would contest and take appropriate administrative action if its job offers were rejected by its disabled employees; and

c. USPS would act to assist BIOFUNCTION to verify and justify the accuracy and effectiveness of its ErgoWizard system for use in the USPS.

d. USPS would provide BIOFUNCTION with a formal operational endorsement to the Pacific Area for consideration of potential future expansion of its program to all districts within the Pacific area.

34. BIOFUNCTION is informed and believes and based thereon alleges that, the agreement was entered on behalf of the USPS by government representatives having actual authority to bind the United States and ratified by government representatives having actual authority to bind the United States.

35. The USPS breached its agreement with BIOFUNCTION in that it failed to perform the acts as represented to BIOFUNCTION.

36. USPS induced BIOFUNCTION to perform the said services by its misrepresentation, fraud or mistake,

37. USPS received the benefit of BIOFUNCTION's services and, under the circumstances of USPS's inducements to BIOFUNCTION, USPS should not equitably be allowed to retain the benefit of the additional services without paying BIOFUNCTION for the reasonable value of the services received.

38. The reasonable value of the services rendered to USPS by BIOFUNCTION is as follows:

a. Capitalization costs attributable to the additional mobilization demanded by USPS in an amount to be proved at trial;

b. $368,408.40 as and for services performed; and

c. Interest at the legal rate from the date the BIOFUNCTION claim was presented to the contracting officer, May 22. 2006.

WHEREFORE, BIOFUNCTION seeks judgment against the UNITED STATES in the amounts set forth below:

1. Capitalization costs attributable to the additional mobilization demanded by USPS in an amount to be proved at trial;

2. The amount of $368,408.40;

3. Interest on the amount of $368,408.40, at the legal rate from May 22. 2006;

4. Costs of suit; and

5. Such other and further relief as this court deems just and proper.

Date: January 25, 2007

LAW OFFICES OF DAVID W. GINN

By ______________________

BARBARA J. MASSEY
Attorneys for Plaintiff,
BIOFUNCTION, LLC

1981 N. Broadway, Suite 275
Walnut Creek, CA 94596
Telephone: (925) 256-4466
Facsimile: (925) 256-4423