**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BIOFUNCTION, LLC,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| **v.** | **)** | **No. 07-67C** |
| | **)** | **(Judge Hodges)** |
| | **)** | |
| **THE UNITED STATES,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**DEFENDANT'S RESPONSE TO THE COURT'S ORDER**

Pursuant to the Court's order, dated October 12, 2007, the defendant respectfully submits this response to the Court's order.

1. Does the written contract dated February 8, 2005 vary from plaintiff's alleged responsibilities in accordance with the October 4, 2004 contract? Does the parol evidence rule apply?

The document that was executed on February 8, 2005 was not a contract, but a modification to an existing contract. On May 16, 2003, BioFunction and the United States Postal Service ("USPS") entered into contract no. 1BCHSO-03-F-5433 (the "contract"). Complaint, ¶ 3. Under the terms of the contract, BioFunction agreed to provide services related to the evaluation of disabled workers, which would assist USPS in providing them with job offers tailored to accommodate each worker's disability. Complaint, ¶ 3a. On January 16, 2004, the contract was modified to continue the contract for another year. Pursuant to this modification, USPS agreed to pay BioFunction an additional $249,900 for a total payment of $590,700. Complaint, ¶ 3c. On February 8, 2005, USPS and BioFunction entered into another modification extending the contract to April 30, 2005, which added an additional $90,000 to the value of the contract for a total of $680,700. Complaint, ¶ 3e. However, six days later, on February 14, 2005, the USPS terminated the contract for convenience effective February 11,

2005. Complaint, ¶ 5. USPS paid BioFunction for the original contract amount of $340,800 and for the first extension of $249,900, but has not paid any of the second extension because the contract was terminated six days after the parties entered into the second extension.

The parol evidence rule does not apply here. Under the parol evidence rule, extrinsic evidence pre-dating a written agreement may not be used "to add to or otherwise modify the terms of a written agreement in instances where the written agreement has been adopted by the parties as an expression of their final understanding." Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004). In this case, the parties' written agreement was entered into on May 16, 2003. Defendant is not aware of any extrinsic evidence that precedes that date that may be relevant in this case. Moreover, we do not believe that plaintiff is alleging that the allegations included in its implied contract claim, contained in Count IV of its complaint, are part of the express contract. Rather, plaintiff appears to claim that it entered into a separate implied contract to complete additional work that was not included in the express contract. In any event, the parole evidence would not apply because if plaintiff is relying upon any extrinsic evidence at all, it appears that plaintiff is seeking to adduce extrinsic evidence of conduct between the parties after the parties entered into their written agreement.

2. Does the plaintiff allege that the extra work completed resulted from discussions with an authorized person at the USPS, prior to signing the new contract on February 8, 2005? If so, please name the authorized person.

Plaintiff's complaint does not name a specific person that allegedly entered into an implied contract with plaintiff. However, as we demonstrated in our partial motion to dismiss, it does not matter whether the person who allegedly entered into the implied contract with plaintiff had authority because "[t]he existence of an express contract precludes the existence of an

implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract."[1] Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990) (citing ITT Federal Support Services, Inc. v. United States, 531 F.2d 522, 528 n. 12 (Ct. Cl. 1976)) (emphasis added). As a result, plaintiff's implied contract claim should be dismissed regardless of whether the USPS person involved had authority to enter into the alleged implied agreement.

3. Is this a Contract Disputes Act case? If so, can plaintiff prove an implied in fact contract despite the existence of an express contract? Discuss the differences or similarities between the work required by each alleged contract.

Plaintiff's claim, to the extent it can be construed as a claim for termination-for-convenience costs, constitutes a Contract Disputes Act case. See, e.g., White Buffalo Constr., Inc. v. United States, 52 Fed. Cl. 1 (2002).

As we stated in our motion to dismiss and reply brief, plaintiff's cause of action for breach of an implied contract is defective on its face because "[t]he existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990) (citing ITT Federal Support Services, Inc. v. United States, 531 F.2d 522, 528 n. 12 (Ct. Cl. 1976)) (emphasis added). Therefore, to prove that plaintiff has a valid implied-in-fact contract, plaintiff would have to show that the subject matter of such a contract is "entirely unrelated" to the parties' express contract, contract no. 1BCHSO-03-F-5453, dated May 16, 2003.

---

[1] Plaintiff's unjust enrichment claim should also be dismissed because this Court lacks jurisdiction over unjust enrichment claims. Frank & Breslow, LLP v. United States, 43 Fed. Cl. 65, 68 (1999) ("Plaintiff's claim of unjust enrichment is also beyond our jurisdiction. Contracts implied-in-law do not fall under the Tucker Act.") (citations omitted).

Plaintiff's implied contract is not entirely unrelated to any alleged implied contract. BioFunction alleges that, under the terms of an express contract, BioFunction "agreed to provide certain services related to the evaluation of disabled workers . . . This work specifically included the use of the ErgoMatch or Ergo Wizard system that evaluated the extent of disabilities and, based on ergonomic analysis, pinpointed jobs . . . ." Complaint, ¶ 3(a) (emphasis added). Similarly, under its claim of breach of an implied contract, BioFunction alleges that it "agreed to provide training and additional support to assist the USPS to offer suitable jobs to employees for whom the Ergo Wizard system identified to be capable of the work." Complaint, ¶ 26 (emphasis added). BioFunction's implied contract claim is clearly not "entirely unrelated" to the express contract alleged in BioFunction's breach of contract claim.[2] As a result, BioFunction's claim for breach of an implied contract should be dismissed for failure to state a claim upon which relief can be granted

---

[2] It is true that the express contract does not include tasks that were allegedly completed under the alleged implied contract, but the two are not "entirely unrelated." Under the terms of the express contract, BioFunction agreed to provide services related to the evaluation of disabled workers, which would assist USPS in providing them with job offers tailored to accommodate each worker's disability including the use of BioFunction's ErgoMatch and ErgoWizard systems for a total of 3,000 evaluations (or "hits") at the rate of $113.60 per hit resulting in a total value of the contract of $340,800. Complaint, ¶ 3.

In BioFunction's invoice, which apparently includes work allegedly performed pursuant to the alleged implied contract, BioFunction claims that it is entitled to $164,560 for 68 right to work examinations at $2,420 each and a $168,000 for "Ergo Wizard Full Service (No Push-Back)" at $1,000 each for 168 units and $115,500 for "Ergo Wizard Full Service (Push-Back)" at $1,500 each for 77 units. The express contract and its modifications do not mention or include any of these services. While it is true that the "right to work examinations" and the Ergo Wizard services included in the invoice are not included in the express contract, these tasks certainly are not entirely unrelated to the express contract in which BioFunction "agreed to provide certain services related to the evaluation of disabled workers . . . This work specifically included the use of the ErgoMatch or Ergo Wizard system that evaluated the extent of disabilities and, based on ergonomic analysis, pinpointed jobs . . . ." Complaint, ¶ 3(a) (emphasis added).

4. What is the status of Counts I-III? If this is a termination for convenience can the Government be held liable for the breaches alleged in Counts I-III? Do counts I-III apply solely to the February 8, 2005 contract?

Assuming that the Court dismisses the unjust enrichment and implied contract claims alleged in plaintiff's fourth and fifth causes of action, the defendant believes that the remaining claims alleged in Counts I-III can be dismissed on summary judgment.

On May 16, 2003, BioFunction and the United States Postal Service ("USPS") entered into contract no. 1BCHSO-03-F-5433 (the "contract"). Complaint, ¶ 3. Under the terms of the contract, BioFunction agreed to provide services related to the evaluation of disabled workers, which would assist USPS in providing them with job offers tailored to accommodate each worker's disability. Complaint, ¶ 3a. Under the terms of the contract, BioFunction and USPS agreed that USPS would be allowed to use BioFunction's ErgoMatch and ErgoWizard systems for a total of 3,000 evaluations (or "hits") at the rate of $113.60 per hit resulting in a total value of the contract of $340,800. Id. The contract also gave the USPS the option to purchase job task analysis services for $95.00 per unit and job training for $260 per participant at a cost of $7,500 per district. The USPS did not exercise either of these options. The contract also included a termination for convenience clause allowing the USPS to terminate the contract at its convenience.

On January 16, 2004, the contract was modified to continue the contract for another year. Pursuant to this modification, USPS agreed to pay BioFunction an additional $249,900 for a total payment of $590,700. Complaint, ¶ 3c.

On February 8, 2005, USPS and BioFunction entered into another modification extending the contract to April 30, 2005, which added an additional $90,000 to the value of the contract for

a total of $680,700. Complaint, ¶ 3e. However, six days later, on February 14, 2005, the USPS terminated the contract for convenience effective February 11, 2005. Complaint, ¶ 5. USPS paid BioFunction for the original contract amount of $340,800 and for the first extension of $249,900, but has not paid any of the second extension because the contract was terminated six days after the parties entered into the second extension.

Prior to filing this lawsuit, BioFunction sent an invoice to USPS seeking payment in the amount of $368,408.40, the same amount as alleged in its complaint. Complaint, 11. In this invoice, BioFunction claims that it is entitled to $164,560 for 68 right to work examinations at $2,420 each. The invoice also attempts to charge the USPS a $168,000 for "Ergo Wizard Full Service (No Push-Back)" at $1,000 each for 168 units and $115,500 for "Ergo Wizard Full Service (Push-Back)" at $1,500 each for 77 units. The contract and its modifications do not mention or include any of these services. The invoice also breaks these charges down by month, demonstrating that these charges were incurred between October 2004 and February 8, 2005, which is prior to the final extension of the contract awarded on February 8, 2005.

It is hornbook law that damages must be the direct result of the breach. Myerle v. United States, 33 Ct. Cl. 1, 27 (1897) ("There must not be two steps between cause and damage."). Damages are not recoverable if they are too speculative or too remote from the alleged breach. Remote or consequential damages may not be awarded. Assurance Co. v. United States, 813 F.2d 1202, 1205 (Fed. Cir. 1987). As the Court said in CCM Corp. v. United States, 15 Cl. Ct. 670, 671 (1988)(citations omitted),

> It is well established . . . that damages may only be recovered against the United States if they arise from the natural and probable consequences of a contract breach. . . . Remote or consequential damages are not recoverable. . . . Additionally,

> damages resulting from a contract breach must be contemplated by the parties when entering into the contract. . . .

Under the termination for convenience clause, the amount of the contractor's recovery is its cost of performance plus a reasonable profit on those costs. United States v. Amdahl Corp., 786 F.2d 387, 394 (Fed. Cir. 1986); G. C. Casebolt Co. v. United States, 190 Ct. Cl. 783, 421 F.2d 710 (1970).

Plaintiff is not entitled to any damages because the contract was terminated only six days after it was awarded. It is well settled that a plaintiff that never starts performance and incurs no costs of performance is not entitled to damages such as anticipated profits. See e.g. G.C. Casebolt Co. v. United States, 421 F.2d 710, 713 (1970). Here, plaintiff's claim does not include any work that was done pursuant to the contract nor does plaintiff's claim include any costs that it incurred in connection with the contract. Plaintiff's invoice only includes right to work examinations and other data processing work that was not contemplated or included in the express contract between BioFunction and the USPS. Moreover, as the first two segments of contract performance were paid in full by the USPS, only the third segment is at issue. But the alleged work included in plaintiff's invoice was completed between October 2004 and February 8, 2005, before the final segment of the contract was even awarded on February 8, 2005. As a result, plaintiff is not entitled to any damages and its complaint should be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/ Robert C. Bigler
ROBERT C. BIGLER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-0315
Fax: (202) 514-8624

November 1, 2007

CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, a copy of the foregoing "DEFENDANT'S RESPONSE TO THE COURT'S ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Robert C. Bigler